UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MARIA ELENA PEREZ,         §
        §
        Plaintiff,         §
VS.         §    CIVIL ACTION NO. 2:13-CV-225
        §
TEXAS A&M UNIVERSITY AT    §
CORPUS CHRISTI, *et al*,     §
        §
        Defendants.      §

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (D.E. 18). Plaintiff, a former nursing student at Texas A&M University at Corpus Christi (the University), brings this action against the University and her professors, alleging that her dismissal from the program violated her constitutional, statutory, and common law rights. Defendants challenge this Court's jurisdiction over certain claims. They further argue that Plaintiff has not stated any claim upon which relief may be granted. For the reasons set out below, the Motion is GRANTED.

## FACTUAL ALLEGATIONS

At issue are the claims in Plaintiff, Maria Elena Perez's (Perez's) "Amended Original Complaint and Demand for Jury Trial" (D.E. 15).[1] Perez began her education in the nursing program at Texas A&M International University in Laredo, Texas, in January

---

[1] Perez references her Affidavit (D.E. 2) filed on July 23, 2013. D.E. 21, p. 1. For the most part, the statements in the Affidavit are identical to her allegations in the Complaint. The Affidavit contains additional detail regarding the defamation claim. However, because of the Court's determination of the immunity questions, the additional representations are irrelevant. See the discussion of Counts Seven and Eight, *infra*.

of 2009, establishing what she describes as "an excellent record of academic achievement."

Perez transferred to the University in Corpus Christi for the Spring 2011 semester to continue working toward a Baccalaureate of Science in Nursing.  In the Fall semester, she completed her course work for her "Med Surge II" class, which includes a clinical rotation.  While she had no problem with the clinical portion of the course, her exam grades fell short of the 75 average required to pass the course.  Her professor, Julie Schwein Fomenko (Fomenko), refused to make an exception to department policy and Perez failed the class.  Perez claims that this refusal is discriminatory because Fomenko was known to make exceptions to this exam grade requirement for other students.

Perez repeated the Med Surge II class in the Spring 2012 semester.  This time, however, she failed the clinical portion of the class as a result of three warnings, which Perez alleges were issued in bad faith, arbitrarily, and capriciously.  First, she received a warning because she failed to complete and upload a Hospital Orientation, which was due January 27, 2012.  Perez was warned that she had to complete the relevant modules by February 22, 2012.  Perez did complete the modules by the new deadline, but alleges that the warning was improper because the syllabus did not require the original January deadline and because the elementary school setting for her clinical rotation did not require prior completion of the Hospital Orientation.

Second, Perez received a warning from Rachel S. Miller Roberge (Roberge), Clinical Instructor of Nursing for being late to a clinical and for failing to properly resubmit a care plan.  Perez had originally submitted her care plan using her Fall 2011

Med Surge II form rather than the Spring 2012 form, which contained additional categories. Perez claims that Roberge told her that, if she simply added the lab sheet and the reference page, the submission would be sufficient. Roberge found the submission of the two items insufficient because Perez had not corrected the entire care plan and denied telling Perez that simply adding the two categories would be sufficient. Perez eventually submitted additional care plans on which she received passing grades.

In connection with the second warning, Roberge also complained that Perez was late to the clinical on April 12, 2012. Perez does not deny being fifty-five minutes late, but explains that she had been preoccupied with important personal matters and had not checked the schedule. She alleges that she made up the time by not taking a lunch break. She further complains that another student who was about thirty minutes late on the same day did not receive a warning.

The third warning again came from Roberge with respect to Perez's clinical performance. That warning complained that Perez was not certain about a patient's blood pressure condition, she did not give a patient a full dosage of an injection, and she did not know what another patient's medication was for and did not know the reason for that patient's hospitalization. Perez does not deny these accusations, but seeks to excuse her performance because she had not been given sufficient time, Roberge made her nervous, and she made an "honest mistake" as a result of being anxious, knowing that a third warning would end her participation in the nursing program.

Plaintiff was expelled from the nursing program one class shy of graduation. She filed an appeal with the nursing department pursuant to the Nursing Student's Handbook,

but was advised that such department appeals were no longer available. She sought reinstatement to the program, which was denied. She then appealed to the University. This resulted in three hearings. The first hearing was conducted without Perez being present. Perez participated in the second hearing and "had an opportunity to plead her case." Perez was excluded from the third hearing at which Fomenko appeared with counsel. Having access to the audio tape of that hearing, Perez alleges that Fomenko made defamatory statements about her.

The University affirmed the dismissal of Perez from the nursing program. Perez argues that this action was arbitrary, capricious, and discriminatory against her because she is Hispanic and of Mexican descent. She claims that students with similar academic performance were treated more favorably because of race. Among the allegations are interventions by the University's administrators to ensure that Caucasian and non-Hispanic students receive passing grades and the application of different standards regarding academic performance and dismissal determinations.

Plaintiff has included as a Defendant Mary Jane-Dean Hamilton (Hamilton), Associate Dean of the Nursing Department. While Hamilton is named in the liability counts in connection with official policy or official acts of the University, nothing in the Complaint describes the specific actionable conduct attributed to Hamilton.

## DISCUSSION

Perez alleges her causes of action in nine counts, including violation of procedural and substantive due process rights, deprivation of equal protection and equal rights, breach of contract, defamation, intentional infliction of emotional distress, and violation

of the Texas Civil Rights Act.  Defendants assert that the Texas Tort Claims Act and Eleventh Amendment immunity require dismissal of Perez's claims.  They also assert that 42 U.S.C. § 1983 does not apply to them and that qualified immunity shields the individual Defendants from liability.  Furthermore, they suggest that the factual allegations do not state deprivations of due process or equal protection, that the Texas state constitution does not provide a remedy within this Court's jurisdiction, and that the Texas Civil Rights Act allegations are insufficient to determine a claim or to establish jurisdiction over that claim.  The arguments will be discussed in the order in which Plaintiff pled her causes of action.

### A. 42 U.S.C. § 1983:  Count One - Fifth Amendment Due Process; Count Two - Fourteenth Amendment Due Process; and Count Three - Fourteenth Amendment Equal Protection

In her first three counts, Perez claims that she was deprived of her property and liberty interests as a result of arbitrary, intentional, discriminatory, and defamatory acts taken in reckless disregard of her rights so as to shock the conscience.  She claims that her right to seek a nursing school education is a fundamental right that constitutes a property interest and her expectation of an unblemished reputation and future career in nursing constitutes a protected liberty interest.  Perez states that her dismissal from the University's nursing program was arbitrary, capricious, motivated by bad faith, and based on false accusations that prejudiced the review committee.  She further claims that she was intentionally singled out and treated less favorably than other similarly situated persons without any rational basis for the difference in treatment.

### 1.  University and Officials are Not Subject to Suit for Damages.

First, Defendants correctly assert that the University and the individual Defendants acting in their official capacity are not "persons" subject to liability under 42 U.S.C. § 1983.  D.E. 18, pp. 8-9.  Neither a state nor its officials and state universities are "persons" against whom a plaintiff may bring a private right of action for money damages.  *Will v. Michigan State Dep't of Police*, 491 U.S. 58, 71 & n.10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see also Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 617, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).  The Fifth Circuit has also specifically recognized that state universities as arms of the state are not "persons" under § 1983.  *Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (citing *Laxey v. Louisiana Bd. of Trustees*, 22 F.3d 621, 623 n.2 (5th Cir. 1994) and *Texas v. Walker*, 142 F.3d 813, 820 n.10 (5th Cir. 1998)).  Texas A&M University at Corpus Christi is such a state university.  Tex. Educ. Code §§ 61.003(3), 86.02, 87.401.

Perez does not provide any counter-argument to this basis for dismissal of the claim.  D.E. 21.  Pursuant to Local Rule 7.4, the failure to brief an argument in response to a basis for relief expressed in a motion constitutes a representation of "no objection" to the relief.  Thus Defendants have shown that they are entitled to dismissal of the § 1983 claims for money damages against the University and the individual Defendants in their official capacity.

### 2. Individual Defendants Are Entitled to Qualified Immunity.

#### a. Procedurally, the Qualified Immunity Defense is a Proper Basis for a Rule 12(b) Motion.

Defendants assert that the individual Defendants acting in their individual capacity are entitled to qualified immunity because their actions were discretionary and their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  D.E. 18, pp. 9-10.  Perez responds that qualified immunity is not a proper basis for a Rule 12 motion.  D.E. 21, p. 5.  For this proposition, Perez relies on *Safeguard Mutual Ins. Co. v. Miller*, 472 F.2d 732 (3rd Cir. 1973) and *Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000).  Neither of Perez's authorities support her position.

The *Miller* case involved the question whether governmental or quasi-judicial immunity applied to executive branch officers:  Pennsylvania's Chief Counsel of the Insurance Commissioner, Director of Licensing of the Insurance Department, two Deputy Insurance Commissioners, an Insurance Examiner, and a Deputy Attorney General.  The court held that it did not know enough about the defendants' duties and the authority conferred upon them to know whether they were entitled to such immunity.  Because of that unknown variable, the court needed the parties to develop a factual record.  At the same time, however, the *Miller* court acknowledged that, because it was aware of the function of judges and prosecutors, it was able to adjudicate their claims to governmental and judicial immunity on a Rule 12 motion without a factual record.  *Miller*, *supra* at 733.

In *Jacobs*, the trial court had granted a Rule 12(b) motion after considering evidence tendered by both sides of the dispute without converting the motion to a summary judgment motion.  The court found that maintaining the procedure as one under Rule 12 rather than Rule 56 was error.  The court then proceeded to consider whether the plaintiffs' pleading alleged a sufficient constitutional violation to overcome the qualified immunity defense.  Finding the allegations sufficient in this illegal search and seizure case, the court remanded for further proceedings.  Nothing in the *Jacobs* opinion prevents the assertion of qualified immunity in a Rule 12(b) motion.  If the pleadings, accepted as true, fail to defeat the defense, the motion may be granted.  If the plaintiff offers evidence separate from the pleading, the court may treat it as a Rule 56 motion or hold that there is a material issue of fact to be decided by the jury.

As Defendants point out, qualified immunity is routinely advanced in the form of a Rule 12(b) motion and can be granted without conversion to Rule 56 if the pleading is insufficient to defeat the defense.  *E.g., Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (reversing the district court for failing to rule on the qualified immunity defense brought in a Rule 12(b) motion).  In fact, as the Supreme Court has emphatically directed, "[q]ualified immunity is an immunity from suit rather than a mere defense to liability."  *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (internal quotation marks omitted).  For that reason, early disposition of the defense prior to discovery is required when no fact issues prevent it.  The Court finds that the qualified immunity defense has been properly raised in the Defendants' Rule 12(b) motion.

### b. Substantively, Qualified Immunity Protects the Individual Defendants.

Perez has alleged, and Defendants do not deny, that the individual Defendants—sued in their individual capacity—are "state actors" for § 1983 purposes.  Yet the Supreme Court has established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

When a defendant invokes qualified immunity, "[i]t is up to the plaintiff to show that the defense does not apply."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).  At the Rule 12(b) stage, "it is the defendant's conduct ***as alleged in the complaint*** that is scrutinized for 'objective legal reasonableness.'"  *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (emphasis in original).  Therefore, Perez will prevail against a qualified immunity defense only if the Complaint (1) states the violation of a clearly established constitutional right (2) of which a reasonable person would have known.  Plaintiff has alleged that Defendants violated three constitutional rights:  procedural due process, substantive due process, and equal protection of the laws or racial discrimination.  Defendants challenge all three.

### 1. Defendants Did Not Violate Rights to Procedural Due Process.

#### a. Academic Dismissal

The "guarantee of fair procedure" requires that when the government invades a constitutionally protected interest in "life, liberty, or property," the government must provide due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Perez alleges that she was deprived of her right to (a) continue her nursing school education and (b) enjoy an unblemished reputation favorable to future employment prospects. D.E. 15, p. 13. The first question is whether these rights are constitutionally protected. *See generally, Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012). Defendants have not challenged that Perez has a constitutionally protected right to pursue her nursing education.

With respect to that right, however, the procedural due process pleading fails on the second question which is whether the procedure afforded was constitutionally sufficient under the circumstances. *Id*. The Supreme Court has often stated that due process is a flexible concept that varies with the particular situation. *Zinermon*, 494 U.S. at 127. Several factors are weighed to determine what procedural protections the Constitution requires for different cases.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

It is well-settled that dismissals for academic cause do not necessitate a hearing before the school's decisionmaking body.  *E.g., Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 87-88, 98 S.Ct. 948, 954 (1978) (approving *Mahavongsanan v. Hall*, 529 F.2d 448 (5th Cir. 1976) and 60 years of unanimous holdings in state and federal courts to that effect prior to the *Horowitz* decision).  Perez claims that her dismissal was not for academic cause but was a disciplinary matter.  D.E. 21, pp. 5-6.

A warning for being tardy could be characterized as a disciplinary matter. However, the complaints in the third warning are matters of an academic nature:  a clinical nursing student's failure to ascertain a patient's blood pressure status, failure to provide the proper dose of an injection, and failure to know the purpose of another patient's medication and hospitalization.  Perez concedes the substantial truth of these complaints in her pleading.

The Court does not supervise or review colleges and universities in the uniform application of their academic standards. *Horowitz*, 435 U.S. at 87 n.4 (citing *Wright v. Texas Southern University*, 392 F.2d 728, 729 (5th Cir. 1968)).  The Supreme Court wrote:

> Academic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement. . . . The decision to dismiss respondent . . . rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical

doctor and was making insufficient progress toward that goal. Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.

Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing. The educational process is not by nature adversary; instead it centers around a continuing relationship between faculty and students, "one in which the teacher must occupy many roles—educator, adviser, friend, and, at times, parent-substitute." . . .  This is especially true as one advances through the varying regimes of the educational system, and the instruction becomes both more individualized and more specialized. In *Goss*, this Court concluded that the value of some form of hearing in a disciplinary context outweighs any resulting harm to the academic environment. Influencing this conclusion was clearly the belief that disciplinary proceedings, in which the teacher must decide whether to punish a student for disruptive or insubordinate behavior, may automatically bring an adversary flavor to the normal student-teacher relationship. The same conclusion does not follow in the academic context. We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship. We recognize, as did the Massachusetts Supreme Judicial Court over 60 years ago, that a hearing may be "useless or harmful in finding out the truth as to scholarship."

*Horowitz*, 435 U.S. at 89-90.

Therefore, the argument that Defendants did not engage in a sufficiently deliberative process prior to dismissal is not something the Court is to decide.  Procedural due process under the United States Constitution does not require that the student be

afforded a hearing prior to an academic dismissal.  Accordingly, any complaint regarding the sufficiency of the hearings that did occur is beyond this Court's purview.

### b.  Reputation and Employment

Perez also contends that she was denied due process with respect to her alleged right to an unblemished reputation favorable to future employment prospects.   She alleges that the process involved "false charges and accusations against [her] which stigmatized her and severely damaged her opportunities for future employment."  D.E. 15, p. 13.  She claims that this was defamatory, punitive, intentional, and outrageous. The only factual allegation in her pleading that addresses this matter is, "After listening to the tape recording of the third hearing, [Perez] found out that Defendant Fomenko made many defamatory false statements about [Perez] to the University's panel."  D.E. 15, p. 10.

To survive a Rule 12(b) motion and a qualified immunity defense, factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  Those factual allegations must then be taken as true, even if doubtful.  *Id*. 127 S.Ct. at 1966.  In other words, the pleader must make allegations that take the claim from "conclusory" to "factual" and beyond "possible" to "plausible."  *Id*.  The *Twombly* court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  127 S.Ct. at 1974.

The Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." 129 S.Ct. at 1951.

Perez has not supplied the parties or this Court with a sufficient factual basis on which this Court may conclude that there is more than a sheer possibility that Defendants have acted unlawfully. To the contrary, Perez admits that the factual matters communicated in her warnings were true, even though she argues that she had an excuse and questions the professor's basis for the missed deadline. If the defamation complained of goes to other matters—such as publication of damaging information beyond the necessary review committee—Perez has failed to state what those matters are, which means that the pleading is fatally conclusory under *Twombly/Iqbal* standards.

For this reason, Perez's procedural due process claim regarding being defamed and denied a name-clearing hearing does not state a claim that overcomes the qualified immunity defense and must therefore be dismissed. Without a predicate factual basis for the defamation claim, the Court cannot determine whether the alleged defamation was communicated outside the bounds of the academic dismissal proceeding.[2] Thus the Court

---

[2]   In *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), *abrogated on other grounds*, *Cleveland Bd. of Educ. v. Loudermill*, 105 S.Ct. 1487, 1492, 470 U.S. 532, 541, 84 L.Ed.2d 494, 494 (1985), the Supreme Court upheld the dismissal of a policeman without a hearing, rejecting the theory that the mere fact of dismissal, absent some publicizing of the reasons for the action, could amount to a stigma infringing one's liberty.

need not reach the question whether Perez has a constitutional right to a name-clearing hearing.

The Court GRANTS the Motion to Dismiss as to Perez's procedural due process claims brought pursuant to 42 U.S.C. § 1983. The Complaint does not assert a constitutional claim either entitling Perez to relief or that can survive the Defendants' assertion of the qualified immunity defense.

### 2. Defendants Did Not Violate Right to Substantive Due Process.

With respect to substantive due process, Perez must show that Defendants' actions were arbitrary and wrongful, regardless of the fairness of the procedures used to implement them. *Marco Outdoor Advertising, Inc. v. Regional Transit Authority*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (citing *Zinermon, supra*). To be actionable, the wrongdoing must be so extreme as to shock the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 1717 (1998).[3] Such conduct—at the constitutional level—has been held to require, at a minimum, "deliberate indifference." *McClendon, supra* at 326. That is, the allegations must show that the defendant acted in conscious disregard of a known and excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994); *McClendon, supra* at 326 n.8.

---

[3] Some subsequent history suggests that a fundamental liberty interest test, rather than "conscience-shocking," is the test to be applied in determining a violation of substantive due process. *See Chavez v. Martinez*, 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (multiple opinions with no majority expressly addressing which test to apply); *Conn v. Gabbert*, 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (analyzing substantive due process claim against prosecutors' conduct without reference to "shocks the conscience" test). However, the Fifth Circuit continues to apply the *Sacramento* conscience-shocking test. *E.g.*, *Whitley v. Hanna*, 726 F.3d 631, 639 n.2 (5th Cir. 2013).

Perez, without detailed explanation, alleges that the actions that Defendants took were arbitrary and unjustifiable, rising to the level of being conscience-shocking.  D.E. 15, pp. 11-12.  Nothing in the allegations or the briefing on this motion directs this Court to facts that, if proven, would shock the conscience or demonstrate deliberate indifference.  This claim fails under the *Twombly*/*Iqbal* test.  Furthermore, taking the allegations as true, Defendants had academic requirements for passing the Med Surge II course and they determined that Perez had not fulfilled those requirements.  Even if Perez were able to persuade a jury that some of the warnings were unfair, her admission that the factual assertions in the third warning were substantially true is enough to find as a matter of law that her academic dismissal is not so arbitrary as to be conscience-shocking.

The Court GRANTS the Motion to Dismiss with respect to the substantive due process claims brought pursuant to 42 U.S.C. § 1983.  The Complaint does not assert a constitutional claim either entitling Perez to relief or that can survive the Defendants' assertion of the qualified immunity defense.

### 3.  Defendants Did Not Violate Right to Equal Protection.

To state a claim for equal protection on a "class of one" basis, Perez must show that she was treated differently from others similarly situated and that there was no rational basis for the disparate treatment.  *Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007).  A racial discrimination claim requires a demonstration that a state actor intentionally discriminated on the basis of race.  *Coleman v. Houston Independent School District*, 113 F.3d 528 (5th Cir. 1997).

16 / 26

In Count Three, Perez pleads, "Defendants have intentionally singled out and treated Plaintiff less favorably than other similarly situated persons, without any rational basis for that treatment. In so doing, Defendants have denied Plaintiff fair and equal treatment under the law in violation of the Equal Protection Clause of the Fourteenth Amendment to United States Constitution." D.E. 15, p. 15.

Within the fact portion of her pleading, Perez asserts:

- "[S]tudents told her that Defendant Fomenko had passed students with a test average like hers or lower, but that said students were always at her office, being nice to her during the semester." D.E. 15.p. 4.

- "[A]nother student was about thirty minutes late on the same day; however, said student did not receive a warning." D.E. 15, p. 7.

- "Defendants have treated similarly-situated students at Defendant Texas A&M University at Corpus Christi whose academic performance was equivalent to or less satisfactory than Plaintiff's academic performance more favorably than Plaintiff because of race. . . . More specifically, Defendant Texas A&M University at Corpus Christi administrators have favored Caucasian, non-Hispanic Mexican minority students by intervening to ensure that they receive passing grades in their courses, and Defendants have applied a different standard with respect to assessing academic performance and/or in making academic dismissal determinations." D.E. 15, pp. 10-11.

Perez does not identify a single other similarly situated student who was treated more favorably, much less state their race. The allegations are conclusory and speculative. They are insufficient to survive the Motion to Dismiss under Rule 12(b) as applied in

*Twombly*/*Iqbal.* Perez did not address this claim in her Response (D.E. 21). Pursuant to Local Rule 7.4, the Motion is further considered unopposed on this issue. The Court GRANTS the Motion to Dismiss on the equal protection and race discrimination claims.

Counts One, Two, and Three are DISMISSED.

### B. Texas Constitution:  Count Four - Due Course of Law and Count Five - Equal Rights

Under Counts Four and Five, Perez makes the same claims as were asserted in her first three counts, but makes them pursuant to the parallel provisions of the Texas Constitution. The claims are for "due course of law" and "fair and equal treatment under the law." D.E. 15, pp. 17-18. Defendants assert: (1) that the Texas Constitution does not support a claim for money damages; (2) that when claims for injunctive relief are made against state action, sovereign immunity requires that the claim be made exclusively against individual state actors in their official capacity such that the University and individual Defendants in their individual capacity are not proper defendants; and (3) that the Eleventh Amendment of the United States Constitution bars any federal adjudication of injunctive relief against the individual Defendants in their official capacity.

With respect to money damages, the Texas Supreme Court has clearly held that there is no private right of action for a "constitutional tort."  *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147-48 (Tex. 1995) (addressing free speech and assembly rights); *Kaufman County v. Combs*, 393 S.W.3d 336, 345 (Tex. App.—Dallas 2012, pet. denied) (applying *Bouillion* to equal protection and due process claims). There is no state statutory equivalent to 42 U.S.C. § 1983 and there is no common law right of action for

damages.  *Bouillion, supra* at 147.  Perez does not dispute this conclusion and the issue is thus deemed unopposed.  Local Rule 7.4.  The Court therefore dismisses the claims for money damages based upon alleged state constitutional violations.

According to state sovereign immunity, the request for prospective injunctive relief regarding unconstitutional state action may be made only against the individual Defendants in their official capacity.  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009).  Perez concedes this point.  D.E. 21, p. 4 (citing *Duncan v. University of Texas Health Science Center at Houston*, 469 Fed. Appx. 364 (5th Cir. 2012) (relying on *Kentucky v. Graham*, 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) and *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908))).  Therefore, the Court dismisses the claims for injunctive relief based on state constitutional violations brought against the University and the individual Defendants in their individual capacities.

Remaining for consideration is an action under the state constitution against the individual Defendants in their official capacities.  Perez acknowledges that her only viable state constitutional claim is for injunctive relief against these Defendants[4].  She does not directly address Defendants' claim of Eleventh Amendment immunity, but appears to rely on the *Ex parte Young* doctrine.

The Eleventh Amendment declares there is no "Judicial power of the United States" over a suit "against one of the United States by Citizens of another State, or by

---

[4]  *See generally, Nelson v. University of Texas at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008) (holding that an action may be maintained against employees of a state university for prospective relief).

Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI.  Despite the limited categories of suits barred by the Amendment's literal language, the Supreme Court has long interpreted the Amendment as granting a state immunity from suits brought in federal court by her own citizens as well as by those of another state.  *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The *Ex parte Young* doctrine "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with ***federal*** law."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993) (emphasis added).  *See also, Cantu Services, Inc. v. Roberie*, No. No. 12–30736, 2013 WL 3420524, *2 (5th Cir. 2013).  The *Pennhurst* limitation on *Ex parte Young* ensures that state officials cannot be brought into federal court for the enforcement of ***state*** law claims against them.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908 (1984).  *See generally, Mohler v. State of Mississippi*, 782 F.2d 1291, 1294 (5th Cir.  1986).  Enforcing the Texas Constitution— or any other state law for that matter—is not a sufficient basis under *Ex parte Young* to exercise federal jurisdiction over state officials.  The Court GRANTS the Motion to Dismiss with respect to the Texas state constitutional claims.

Alternatively, as set out above with respect to their federal counterparts, the claims made under the Texas Constitution are also factually deficient under *Twombly*/*Iqbal* and must be dismissed for that reason as well.

Counts Four and Five are DISMISSED.

### C. Count Six:  Breach of Contract or Implied Contract

In Count Six, Perez complains that she had a contract or implied contract with the University, which "Defendants" breached.  D.E. 15, p. 19.  Defendants invoke Eleventh Amendment immunity with respect to any state contract liability and point out that there is no contract between Perez and the individual Defendants to support any relief, including injunctive relief against them.  Perez responds that injunctive relief requiring her reinstatement to the nursing program is still available against the individuals despite immunity.

As set out above, the University as an arm of the State is entitled to Eleventh Amendment immunity from federal jurisdiction.  That immunity extends to breach of contract claims.  *See generally*, *Pillsbury Co. v. Port of Corpus Christi Authority*, 66 F.3d 103 (5th Cir. 1995).  Perez has not demonstrated any waiver of that immunity by legislative action and authorities hold that, without legislative consent, immunity has not been waived.  *E.g., Pennhurst, supra*; *Freedman v. University of Houston*, 110 S.W.3d 504, 507-08 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (addressing sovereign immunity).  Under *Pennhurst*, the state, through its legislature, must unequivocally waive sovereign immunity ***and*** consent to be sued in federal court before a state claim against a state officer may be brought in the federal system.  *Pennhurst*, 465 U.S. at 99.

Suing the individuals in their official capacity seeking specific performance or an injunctive remedy for breach does not eliminate the character of the suit as one against the state.  The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest."  *Pennhurst, supra*; *Herring v. Houston National*

*Exchange Bank*, 253 S.W. 813, 814 (Tex. 1923).  A suit seeking injunctive relief to enforce contractual rights is necessarily a suit against the state that cannot be maintained without legislative permission.  *Texas Parks & Wildlife Dept. v. W.M. Callaway*, 971 S.W.2d 145, 152-53 (Tex. App.—Austin 1998, no writ).  Perez's claims against the University are barred by Eleventh Amendment immunity.

Injunctive relief against the individual Defendants is not available because they are not parties to the contract[5] and because, as set out above, the *Pennhurst* limitation on the *Ex parte Young* doctrine prevents the assertion of a claim for injunctive relief against individuals acting in their official capacity when that complaint is based on state law. Furthermore, declaratory or injunctive relief cannot be used to circumvent sovereign immunity.  *Texas Natural Resource Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 861 (Tex. 2002); *Callaway, supra*.

The Court GRANTS the Motion to Dismiss on the issue of breach of contract. Count Six is DISMISSED.

### D.  Count Seven - Defamation and Count Eight - Intentional Infliction of Emotional Distress

In Counts Seven and Eight, Plaintiff complains that Defendants made defamatory statements to third parties.  According to the preliminary factual recitation (D.E. 15) and Perez's Affidavit (D.E. 2), this claim is based on the information allegedly given by Fomenko in the third hearing with respect to Perez's appeal of her dismissal.

---

[5]    *Mullins v. TestAmerica, Inc*. 564 F.3d 386, 418 (5th Cir. 2009) (a breach of contract action requires that there be an existing contract that can be breached); *Marquis Acquisitions, Inc. v. Steadfast Ins. Co*., 409 S.W.3d 808, 813-14 (Tex. App.–Dallas 2013, no pet.) (same).

Defendants' conduct, overall, is alleged to have been extreme, outrageous, and of such character as not to be tolerated by a civilized society.    Defendants argue that the Texas Tort Claims Act (TTCA)[6] applies to any tort claims made against a governmental entity and that the TTCA bars these claims by requiring the dismissal of the claims against the individual Defendants and by failing to waive sovereign immunity as to the University. Once again, Perez responds that she remains entitled to injunctive relief in the form of reinstatement to the nursing program.

The Court has already established that the University is a governmental entity. There is no question that any tort claims must be made through the TTCA.   TTCA § 101.021; *Franka v. Velasquez*, 332 S.W.3d 367, 376 (Tex. 2011) (TTCA is the rubric for determination of tort claims even if there is no waiver for the alleged tort); *Mission Consolidated Independent School Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (all tort claims against governmental entity are presumed to be brought under TTCA).

Under the TTCA election of remedies provision, the claims against the individual Defendants—in both their individual and official capacities and for both monetary and injunctive relief—must be dismissed.   TTCA § 101.106; *Texas Bay Cherry Hill v. City of Fort Worth*, 257 S.W.3d 379, 401 (Tex. App.—Fort Worth 2008, no pet.) (dismissal required under both individual and official capacity); *Leatherwood v. Prairie View A&M University*, No. 01–02–01334–CV, 2004 WL 253275, *2-3 (Tex. App.—Houston [1st Dist.] Feb. 12, 2004, no pet.) (dismissal is appropriate whether claim is for damages or injunctive relief).   That is because, by suing the University, Perez triggered the election

---

[6]   Tex. Civ. Prac. & Rem. Code § 101.001 et seq.

of remedies provision requiring the mandatory dismissal of the individual employees upon the University's motion.  TTCA § 101.106(e).

With respect to the University, dismissal is required because the TTCA does not waive immunity for defamation, intentional infliction of emotional distress, or any other intentional tort.  TTCA § 101.057; *Umoren v. Plano Independent School Dist.*, No. 11–40444, 457 Fed. Appx. 422, 425, 2012 WL 33039, *1 (5th Cir. January 6, 2012) (no waiver for intentional infliction of emotional distress); *Hernandez v. Pulido*, No. 00-41232, 2001 WL 1013086 (5th Cir. August 2, 2001) (*per curiam;* disposition noted at 273 F.3d 392) (no waiver for defamation); *Amadi v. City of Houston*, 369 S.W.3d 254, 260 (Tex. App.—Houston [14[th] Dist.] 2011, pet. denied) (no waiver for defamation or intentional infliction of emotional distress).

Additionally, the Eleventh Amendment requires this Court to dismiss the claim because even claims for injunctive relief do not circumvent this immunity when based purely upon state law.  This Eleventh Amendment immunity has been established above.

The Court GRANTS the Motion to Dismiss with respect to the claims for defamation and intentional infliction of emotional distress.   The Court DISMISSES Counts Seven and Eight.

### E.  Count Nine - Texas Civil Rights Act

Perez alleges that Defendants violated the "Texas Civil Rights Act" (TCRA) by discriminating against her on the basis of race in an educational institution.  Defendants point out that Perez does not state a citation for the TCRA claim.  Perez does not offer any clarification in her Response (D.E. 21).   Nonetheless, it appears that Perez is

invoking Tex. Civ. Prac. & Rem. Code § 106.001-106.003, which is derived from Tex. Rev. Civ. Stat. Ann. art. 6252-16, § 1(a)(6), (7) (Vernon 1976), previously referred to as the Texas Civil Rights Act.  *See Ibarra v. Bexar County Hospital Dist.*, 624 F.2d 44, 46 (5th Cir. 1980).

In its current form, the TCRA states:

> (a) An officer or employee of the state or of a political subdivision of the state who is acting or purporting to act in an official capacity may not, because of a person's race, religion, color, sex, or national origin
>
> (1) refuse to issue to the person a license, permit, or certificate; . . .
> (4) refuse to permit the person to participate in a program owned, operated, or managed by or on behalf of the state or a political subdivision of the state;
>
> (5) refuse to grant a benefit to the person; [or]
>
> (6) impose an unreasonable burden on the person . . . .

TCRA, § 106.001.  The remedies provided are limited to preventive relief, such as an injunction, and attorney's fees to a prevailing party.  TCRA, § 106.002; *Toungate v. Bastrop Independent School Dist.*, 842 S.W.2d 823, 828 (Tex. App.—Austin 1992, no writ) (interpreting statutory language as precluding compensatory damages).

This statute constitutes a waiver of sovereign immunity.  *Ntreh v. University of Texas at Dallas*, 936 S.W.2d 649, 654 (Tex. App.—Dallas 1996), *modified on other grounds*, 947 S.W.2d 202 (Tex. 1997).  Assuming without deciding that the relief Perez seeks with respect to reinstatement into the nursing program can be characterized as prospective rather than retroactive, the claim is one under state law, is effectively against

the University (and, hence, the State), and is thus improperly before this Court due to the Eleventh Amendment and the *Pennhurst* limitation on the *Ex parte Young* doctrine, discussed above.

While the Court disagrees with Defendants' claim that this cause of action is barred by sovereign immunity, the Court GRANTS the Motion to Dismiss because of Eleventh Amendment immunity from suit in this Court.  Alternatively, the factual allegations are insufficient under *Twombly/Iqbal*.

The Court DISMISSES Count Nine.

## CONCLUSION

For the reasons set out above, the Court GRANTS the Motion to Dismiss (D.E. 18).  To the extent this holding is based upon the Eleventh Amendment, it is a grant of relief pursuant to Fed. R. Civ. P. 12(b)(1) due to lack of subject matter jurisdiction. [7]  As to the other issues, the holding is based upon Fed. R. Civ. P. 12(b)(6) in that Perez has failed to state any claim upon which relief may be granted.

ORDERED this 2nd day of December, 2013.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE

---

[7]    The Fifth Circuit has treated dismissals based on state sovereign immunity as jurisdictional under Fed. Rule Civ. Proc. 12(b)(1) See, e.g. Warnock, 88 F.3d at 343.  At the same time, it has observed the uniquely ambiguous character of Eleventh Amendment immunity.  *Cantu Services, Inc. v. Roberie*, 2013 WL 3420524, *4 n.3 (5th Cir. 2013) (citing *Union Pac. R. Co. v. La. Pub. Svc. Comm*., 662 F.3d 336, 340 (5th Cir. 2011)(noting that "Eleventh Amendment immunity operates like a jurisdictional bar," but "may be waived by the state") and 13 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 3524.1 (3d ed.).  *See also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (applying the Eleventh Amendment as a jurisdictional issue).